CITY OF JERSEY CITY, A MUNICIPAL CORPORATION; CITY OF
    ELIZABETH, A MUNICIPAL CORPORATION; BOARD OF ED-
    UCATION OF THE CITY OF ELIZABETH; THE NEW JERSEY
    BUILDERS ASSOCIATION, A NEW JERSEY NON-PROFIT AS-
    SOCIATION; NEW JERSEY ASSOCIATION OF REALTORS, A
    NEW JERSEY NON-PROFIT ASSOCIATION; AND NEW JER-
    SEY LAND TITLE ASSOCIATION, A NEW JERSEY CORPORA-
    TION, APPELLANTS, v. TIDELANDS RESOURCE COUNCIL,
    IN THE DIVISION OF COASTAL RESOURCES, IN THE DE-
    PARTMENT OF ENVIRONMENTAL PROTECTION, AS THE
    TIDELAND AGENT OF THE STATE OF NEW JERSEY; ROB-
    ERT E. HUGHEY, COMMISSIONER OF ENVIRONMENTAL
    PROTECTION, AS THE APPROVING AUTHORITY DESIGNAT-
    ED BY N.J.S.A. 13:1B–13; TRUSTEES FOR THE SUPPORT OF
    PUBLIC SCHOOLS, AS DESIGNATED BY N.J.S.A. 18A:56–1;
    AND THE STATE OF NEW JERSEY, RESPONDENTS.

Argued September 12, 1983—Decided December 21, 1983.

*John R. Weigel* argued the cause for appellants.

*Deborah T. Poritz,* Deputy Attorney General, argued the cause for respondents (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Michael R. Cole,* Assistant Attorney General, of counsel; *Deborah T. Poritz* and *William E. Andersen,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

The New Jersey Constitution was amended on November 3, 1981 by providing that the State must specifically define and assert its claims to land that had not been tidally flowed for a period of 40 years. *N.J. Const.* of 1947, art. VIII, § 5, para. 1

(the "Amendment"). The State was required to act within the 40-year period or be barred from asserting its claims. However, the Amendment afforded the State an additional one-year period ending November 3, 1982 within which to define and assert claims with respect to tidelands that had not been flowed for 40 or more years before November 3, 1981. It was with reference to delineation of the State's claims within the one-year period ending November 3, 1982 that the Tidelands Resource Council (the "Council") on May 27, 1982 approved the publication of 713 maps and studies and their distribution "in accordance with applicable law."

Plaintiffs, City of Jersey City, City of Elizabeth, Board of Education of the City of Elizabeth, New Jersey Builders Association, New Jersey Association of Realtors, and New Jersey Land Title Association, appealed to the Appellate Division to review the Council's action "in publishing a series of 713 maps required by *N.J.S.A.* 13:1B–13.1 et seq., which assert claims of State ownership of land based on the so-called tideland doctrine." The notice of appeal, dated July 6, 1982, stated it was not a general challenge to the State's mapping techniques, but rather a challenge to: (1) a reservation and disclaimer inserted on the maps (the "Statement"); (2) the State's failure to include with 613 of the maps grant overlays; (3) the State's use of a paper base product for its maps; (4) the State's failure to file the maps with the Secretary of State, keepers of county land records, and municipal clerks, as required by *N.J.S.A.* 13:1B–13.4; (5) the State's failure to provide a metes and bounds description of its claims as mandated by *N.J.S.A.* 13:1B–13.4; and (6) the State's failure to publish in local newspapers a listing of parcels claimed by the State as required by *N.J.S.A.* 13:1B–13.4. We granted the Attorney General's motion for direct certification of the appeal pending in the Appellate Division. 93 *N.J.* 298 (1983).

The plaintiffs have assumed that *N.J.S.A.* 13:1B–13.1 to –13.6 ("Title 13"), which concerned the Council's obligation to determine and certify those *meadowlands* that it finds are State owned lands, govern the technique required by the Amendment,

that is, that Title 13 methodology must be utilized to define specifically and assert claims to *all* lands formerly tidally flowed. We have decided this day in *Dickinson v. The Fund for the Support of Free Public Schools,* 95 *N.J.* 65 (1983), however, that the State need not confine itself and is not required to follow the methodology of Title 13 to satisfy the Amendment.

The State was attempting to satisfy the Amendment's requirements when the Council approved the 713 maps on May 27, 1982. Any doubt in that respect has to be dispelled by the first paragraph of the Statement printed on the maps. The Statement reads as follows:

Article VIII, Section 5, Paragraph 1 of the New Jersey Constitution requires the State to assert its riparian claim to land which has not been flowed by the tide since November 3, 1941 to November 3, 1982, or forfeit its claim. Similarly, as to land which acquires the status of property not tidally flowed for 40 consecutive years after November 3, 1981, the State must assert its riparian claim before the conclusion of the 40 year period, or lose it. These maps are being adopted to avoid these forfeitures and constitute the State's claims to riparian lands.

The claim lines do not reflect the changes constantly occurring from the movement of land and water at the ocean's shore and elsewhere, or the impact of additional data which may become available or usable after the maps were drawn. Also, the claims lines do not show valid grants made by the State, and, therefore, also do not reflect grant overlays, ungranted riparian land inshore or adjacent to grants, or the legal effects of failed grants. Nor do the lines drawn reflect or impact on claims made in particular litigation, or reflect filling under the Wharf Act of 1851 or the location of the former head of tide in inland waterways. In all these respects the lines are subject to alteration.

To the extent not precluded by the New Jersey Constitution or applicable law the Tidelands Resource Council reserves the right to adjust the claims lines landward or waterward as new evidence becomes available.

We find nothing in the Statement that vitiates the State's obligations under the Amendment. The first paragraph is simply informative. The second paragraph is factual. The first sentence of that paragraph notes that the lines do not reflect changes constantly occurring at the ocean shore, referring to the natural processes of accretion, reliction [1] and erosion. *See gen-*

---

[1]Reliction is "the gradual [and imperceptible] withdrawal of water from the land by the lowering of its surface level." *Garrett v. State,* 118 *N.J.Super.*

*erally Garrett v. State,* 118 *N.J.Super.* 594, 600–01 (Ch.Div.1972) (describing these processes). In the second and third sentences, the reader is advised that the claim lines on the maps do not reflect grants made by the State, or claims made in particular litigation or filling under the Wharf Act of 1851, *L.*1851, *p.* 335, or location of the former head of tide in inland waterways. These reservations are intended essentially for the benefit and not the disadvantage of the property owner since they advise him that his claims may not be foreclosed for other reasons.

Moreover, the last paragraph of the Statement observes that any alterations in lines shown may be accomplished *"[t]o the extent not precluded by the Constitution or applicable law"* (emphasis added). The general limitation applies to all modifications referred to in the prior paragraphs. The State agrees thereby that no changes may be made that would violate the Amendment. In the absence of a controversy involving a particular piece of property, we do not perceive that the reservations in the Statement are illegal, improper or ill-advised.

None of the other five charges that relate to Title 13 requirements is sufficient to invalidate the 713 maps for the purpose of compliance with the Amendment. We have held this day in *Dickinson* that the State specifically defined and asserted its claims to those lands for which it had prepared and published base photomaps with claim overlays that it filed with the appropriate governmental offices. 95 *N.J.* at 84. No more than that is mandated by the Amendment.

We have already concluded in *Dickinson* that the Amendment does not require the State to prepare grant overlays—that is, transparent sheets to be superimposed on the base photomaps that would delineate those tidelands that the State has conveyed. In any event, the State is attempting to prepare such overlays. This process is time-consuming and costly and has yet

594, 600 (Ch.Div.1972) (quoting *Ziemba v. Zeller,* 165 *Neb.* 419, 422, 86 *N.W.* 2d 190, 193 (Sup.Ct.1957)).

not been completed. Meanwhile, property owners probably have title searches, grant documents or quitclaim deeds to which they can refer for clarification of the extent of the State's claims.

There is no merit in the plaintiffs' other three contentions. The filing requirements have been satisfied. *Dickinson*, 95 *N.J.* at 84. The Amendment does not require that the State prepare metes and bounds descriptions of the property it is claiming; in fact, the photomaps with claim overlays give property owners a much more graphic picture of the location of the State's claims than a metes and bounds description possibly could. In addition, the State has in fact contracted for the preparation of metes and bounds descriptions. Lastly, the Amendment does not specify the manner in which notice is to be given and therefore the claim that the publication must be in local newspapers is misplaced. As noted throughout, we have considered the issues raised on this appeal as measured by the Amendment's requirements, and not by any statutory provisions.

The appeal is dismissed. No costs.

*For dismissal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.